UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY ANN YANG,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[1]<br><br>Defendant. | Case No. 1:21-cv-00608-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT<br><br>(Docs. 22, 23) |

Plaintiff Mary Ann Yang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the Administrative Record ("AR") and the parties' briefs, which were submitted without oral argument. (Docs. 12, 22, 23).[2] The Court finds and rules as follows.

---

[1] On February 19, 2025, Lee Dudek was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-02-19 (last visited May 7, 2025). He therefore is substituted as the Defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] On March 7, 2022, after both parties consented to the jurisdiction of a magistrate judge for all further proceedings in this action, including trial and entry of judgment, the matter was reassigned pursuant to 28 U.S.C. § 636(c)(1). (Doc. 11).

I.    **BACKGROUND**

A.    **Administrative Proceedings and ALJ's Decision**

On May 9, 2018, Plaintiff applied for Supplemental Security Income (SSI) with an alleged onset date of October 13, 2015.  (Doc. 22 at 2); (Doc. 23 at 2); (AR 222-31).  Plaintiff's claim was initially denied on July 11, 2018, and again upon reconsideration on August 31, 2018.  (AR 19-32, 38-57, 72-101, 104-08, 112-16, 118-33).  Plaintiff requested a hearing before an Administrative Law Judge on September 8, 2018.  (AR 118).  Debra Denney, the Administrative Law Judge ("ALJ"), held a telephone hearing on April 28, 2020, where testimony was offered by Plaintiff with the assistance of a Hmong interpreter and by impartial vocational expert Ashley Bryars.  (AR 19, 38-57).  The ALJ issued an unfavorable decision on June 3, 2020, finding Plaintiff was not disabled.  (AR 16, 19).  The Appeals Council denied Plaintiff's request for review on September 14, 2020, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 5-10, 219-20).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 416.920(a).  (AR 20-21).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 9, 2018, the application date.  (AR 21).

At step two, the ALJ found that Plaintiff has the following severe impairments: depression, anxiety, and a schizoaffective disorder, depressive type.  (*Id.*).  The ALJ determined that Plaintiff's medically determinable impairments ("MDIs") significantly limit her ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28.  (*Id.*).  Further, the ALJ determined that because there is no evidence that Plaintiff's diagnosis with diabetes significantly limits her ability to perform basic work activities, her diabetes is not a severe impairment.  The ALJ noted that: a physical exam showed no abnormalities and Plaintiff's treating physician stated that Plaintiff was likely noncompliant with her insulin regimen; Plaintiff took Metformin in addition to insulin; by September 27, 2018, her A1C and blood sugar readings were trending down and she had a normal neurological exam; she had no skin lesions and she denied having symptoms of numbness, tinging, polydipsia, polyuria, blurred vision, and heat or cold intolerance; by November 1, 2018,

her treating physician stated that she was doing excellent with a fasting blood sugar of 82 and insulin decreased to 35 units; Plaintiff admitted to not complying with medication or diet when her blood sugar increased to 249 on March 21, 2019; her AIC was down from 12.5 in January to 10.0 on March 5, 2020; her daughters were managing her blood sugar and medications; and a neurological exam showed grossly intact sensation in all extremities.  (AR 21-22) (citing B-10F, B11F).  The ALJ separately determined that Plaintiff's hypertension and morbid obesity are non-severe impairments.  (AR 22) (citing Ex. B-11F).  As to obesity, the ALJ noted that Plaintiff weighed 280 pounds at a height of 59 inches with a BMI of 56.55 on March 5, 2020, and that no treating or examining physician has given her any restrictions based on obesity.  (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 22).  In making this finding, the ALJ considered whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[3]  As to understanding, remembering or applying information, the ALJ found that Plaintiff has a moderate limitation, noting that: Dr. Izzi, the consultative psychological examiner, and both of the DDS psychological consultants identified moderate limitations in this domain; that these ratings are supported by progress notes from Plaintiff's treating psychiatrist showing linear, organized and goal-directed thought processes despite simplistic and concrete thinking; and that

---

[3] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.  The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme."  (*Id.*).  To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning.  (*Id.*).  An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  (*Id.*).  A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair."  (*Id.*)  And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "slightly limited."  (*Id.*); *see Carlos v. Comm'r of Soc. Sec.*, No. 1:21-cv-00517-SAB, 2023 WL 1868870, at *4 n.7 (E.D. Cal. Feb. 9, 2023).

1    Plaintiff did unskilled work successfully for a year in 2013.  (AR 22) (citing Ex. B).  As to

2    interacting with others, the ALJ found that Plaintiff has a mild limitation.  As to concentrating,

3    persisting or maintaining pace, the ALJ found that Plaintiff has a moderate limitation.  As to

4    adapting or managing oneself, the ALJ found that Plaintiff has a moderate limitation.  Because

5    these mental impairments do not cause at least two "marked" limitations or one "extreme"

6    limitation, the ALJ determined that the "paragraph B" criteria are not satisfied.  (AR 23).  The ALJ

7    found that the "paragraph C" criteria[4]  were not met because there is no evidence of marginal

8    adjustment of minimal capacity to adapt to changes in the environment or to demands that are not

9    already part of Plaintiff's daily life.  (*Id.*).

10    Prior to step four, the ALJ found that Plaintiff has the RFC to perform work at all exertional

11    levels as defined in 20 C.F.R. 416.967(b) except that Plaintiff:

12    can do simple, routine and repetitive work; understand, carry out and remember
     simple instructions, terms and procedures; is able to maintain work activity for
13    approximately a two-hour time period;  can correct mistakes and work at a
     reasonable pace with normally given work breaks in a typical work day; can sustain
14    a routine schedule; can make simple judgments on work related decisions; is able
     to ask questions; accept constructive criticism; tolerate occasional interaction with
15    coworkers; and complete her work activities without distracting others or otherwise
     disturbing the work environment.
16

17    (AR 23).   In considering Plaintiff's symptoms and the extent to which these symptoms can

18    reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ

19    noted she followed the two-step process as set forth in the 20 C.F.R. 416.929 and SSR 16-3p and

20    considered the medical opinion(s) and prior administrative medical finding(s) in accordance with

21    20 C.F.R. 416.920c (discussed *infra*, pp. 16-18).  In this regard, the ALJ noted inconsistencies and

22    concerns in Plaintiff's psychiatric consultative exam records and found that Plaintiff's statements

23    therein "are inconsistent with her alleged mental health symptoms and limitations."  (AR 24-25)

24    (citing Ex. B-3F, B-7F, B-9F).  The ALJ noted that Plaintiff's statements "suggest motives of

25

26    _____

     [4] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that
27    diminishes the signs and symptoms of [Plaintiff's] mental disorder."  20 C.F.R. § Pt. 404, Subpt.
     P, App. 1 § 12.04(C)(1).  "Paragraph C," subsection (2) requires that Plaintiff "have minimal
28    capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of
     [Plaintiff's] daily life."  (*Id.* at subsection (C)(2)).

1    secondary gain in [her] complaints of depression" and that her statements to evaluating psychiatrist

2    Dr. Chofla regarding the duration of her symptoms as "less than one hour and that her triggers were

3    less frequent" and that she had improvements with medication are "inconsistent with her allegation

4    of ongoing symptoms such as hearing voices."  (AR 25) (citing Ex. B-7F).  The ALJ noted

5    inconsistencies ·in Plaintiff's allegations with regard to the observations of consultative

6    psychological examiner Roger Izzi, Ph.D., including his observations "that he did not observe any

7    auditory or visual hallucinations" although Plaintiff "alleged hearing voices" and that Plaintiff

8    spoke English in her exam with Dr. Izzi "in contrast to [her] prior representation that she did not

9    speak English[.]"  (*Id.*) (citing Ex. B-7F, B-8F, B-5A).  The ALJ further noted that Plaintiff's

10   statement that "she had applied for work but was not hired" and that "she considers herself capable

11   of performing work activity is also inconsistent with her allegations of disabling symptoms." (*Id.*)

12   (citing Ex. B-7F).

13        The ALJ summarized third-party statement reports from Plaintiff's family members

14   including from her daughter, mother, and two of her sisters.  (AR 25-26) (citing Ex. B-16E-18E &

15   20E).  The ALJ found the third-party statements were not persuasive as they are inconsistent with

16   the objective medical evidence including as to Plaintiff's comprehension of the value of money,

17   prior work history, ability to groom and care for herself independently, medication use, and

18   physical and mental limitations.  (*Id.*).  The ALJ found that "there is no evidence of psychosis in

19   the record" despite Plaintiff's allegations that she hears voices, her exam records "have been

20   normal[,]" she "has never been diagnosed [with] a psychotic disorder[,]" and all family members

21   have stated that "she has improved with prescribed medications."  (AR 26).  The ALJ also found

22   the third-party function report of Plaintiff's sister, Pa Foua Yang, inconsistent as the limitations

23   described therein conflicted with the observations of Plaintiff's treating psychiatrist and of

24   Plaintiff's statements.  (AR 26-27) (citing Ex. B-3F, B-3E).  The ALJ found that Plaintiff's

25   statements and activities "indicate the capacity to understand, remember and carry out at least

26   simple instructions[.]" (AR 26-27) (citing Ex. B-3F, B-3E).

27        The ALJ summarized the objective medical evidence and found it "supports a conclusion

28   that [Plaintiff] is not disabled."  (AR 27).  The ALJ thereafter turned to the medical opinions and

prior administrative medical findings.  (AR 28).  The ALJ found that Dr. Chofla's lack of restrictions in his June 12, 2019, formal psychiatric assessment "persuasive in view of her normal mental status findings before, on and after that date."  (*Id.*).  The ALJ found unpersuasive the observations of Sai Vang, a registered associate marriage and family therapist, including Vang's diagnosis of Plaintiff with schizoaffective disorder, as Dr. Chofla, Plaintiff's treating psychiatrist, "has never made this diagnosis" and he noted on August 14, 2019, that Plaintiff "did not, in fact, have a true psychosis[.]"  (*Id.*) (citing Ex. B-7F, B-9F).

The ALJ found persuasive the opinion, diagnosis, and RFC assessment of psychological consultative examiner Dr. Izzi as the opinion is "well supported by his objective medical signs and findings and consistent with the observations and findings of Dr. Chofla."  (AR 28).  The ALJ noted from Dr. Izzi's findings:

> [Plaintiff] stated that she completed the 11th grade and spoke English during the exam.  Dr. Izzi administered the [Wechsler Adult Intelligence Scale-IV] (WAIS-IV), on which [Plaintiff] attained a full scale IQ of 48, in the extremely low range and at the 1st percentile.  However, [Dr. Izzi] stated that the test results did not appear consistent with her report of activities of daily living, her history of work activity and the fact that she had raised four children.  The Visual Memory Index of the WMS-IV was administered and [Plaintiff] scored at the 0.1 percentile, suggesting deficits in visual memory.  Although Dr. Izzi did not comment on this test result, he did not note any objective clinical observations or mental status findings that would corroborate such a low score, such as an inability to copy shapes or pictures.  Dr. Izzi noted that there were no medical records available for review that would support her subjective complaints and diagnosed a persistent depressive disorder with anxious distress.  He concluded that she would have moderate limits in the ability to understand, remember and carry out both short and simple and detailed and complex instructions and in the ability to interact appropriately with the public, supervisors and coworkers and to respond appropriately to usual work stress.

(AR 28) (citing Ex. B-8F).  The ALJ then noted inconsistencies of Plaintiff's statements to the notes of Dr. Chofla:

> Dr. Chofla's notes do not substantiate the claimant's extremely low full scale IQ on the WAIS-IV, as she has consistently shown normal thought processes during Dr. Chofla's exam.  Her statements to Dr. Chofla regarding learning to drive and stating that she was limited in this pursuit only by her inability to read Hmong or English also appears inconsistent with such a low IQ as they indicate normal functioning and a consciousness of a deficit that interferes with her goal of driving.

(*Id.*).

The ALJ found persuasive the opinions of the DDS MDs who previously evaluated the case as consistent with the medical evidence, noting that on July 6, 2018, the DDS MD at the initial level found Plaintiff did not have a severe physical impairment and on August 31, 2018, the DDS MD on reconsideration also found her obesity and diabetes non-severe.  (AR 29) (citing Ex. B-3A, Ex. B-5A).  The ALJ therefore adopted the physical RFC from the prior ALJ decision.  (*Id.*).  The ALJ also found persuasive the opinions of two DDS psychological consultants "as they are well supported by the medical and other evidence in the file" and "are consistent with the observations of Dr. Izzi[] and support his decision not to find more than moderate limitations in the ability to understand, remember and carry out instructions based on [Plaintiff's full scale IQ score on the WAIS-IV." (*Id.*).  The ALJ further noted that these DDS opinions "are consistent with the record as a whole, which show daily activities, work history, personal history including raising four children and statements to her treating psychiatrist that are consistent with simple, routine, repetitive work" and "there is no evidence of more than moderate limitations in social functioning." (*Id.*).  The ALJ therefore found that Plaintiff "should be able to tolerate occasional interaction with coworkers, ask questions, accept constructive criticism and complete her work without distracting others or disturbing the work environment."  (AR 30).

As to Plaintiff's obesity, the ALJ found that there "is no medical opinion which specifies any impact of [her] obesity on the other impairments" and noted that "[h]owever, given the level of [her] obesity," the ALJ found "that the obesity reasonably has some impact on functioning, but not beyond the [RFC]" as assessed. (*Id.*).

The ALJ concluded that Plaintiff's assessed RFC "is supported by the opinion[s] of her treating psychiatrist, … psychological consultative examiner, …the DDS psychiatrist and psychologist, her daily activities[,]" her own statements, and the statements of "her family members that her psychiatric symptoms are well controlled with medication" and she therefore "retains the ability to perform a wide range of work at all exertional levels" as described in the RFC.  (AR 30).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.*).  The ALJ found that Plaintiff is a younger individual on the date the application was filed pursuant to 20 C.F.R. 416.963 and that she has a limited education and is able to communicate in

1    English.  (AR 30-31).  The ALJ found that transferability of job skills is not an issue here because

2    Plaintiff's past relevant work as a poultry eviscerator is unskilled.  (AR 31).

3         At step five, the ALJ found that there are jobs that exist in significant numbers in the

4    national economy that Plaintiff could perform.  (*Id.*).  The ALJ cited to housekeeping cleaner,

5    domestic laundry worker, and merchandise marker, based on testimony of the vocational expert.

6    (*Id.*).  The ALJ found that restrictions proposed by Plaintiff's attorney at the hearing "are not

7    supported by the record as a whole" and therefore concluded a finding of "not disabled" was

8    appropriate.  (AR 32).

9         After the Appeals Council denied review, Plaintiff initiated this action and ultimately filed

10   the instant motion for summary judgment on August 10, 2022.  (Doc. 22).  Defendant filed a cross-

11   motion for summary judgment and opposition on September 26, 2022.  (Doc. 23).

12        **B.**    **Medical Record and Hearing Testimony**

13        The relevant hearing testimony and medical record were reviewed by the Court and will be

14   referenced below as necessary to this Court's decision.

15   **II.**    <u>**LEGAL STANDARD**</u>

16        A district court's review of a final decision of the Commissioner of Social Security is

17   governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the

18   Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is

19   based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence"

20   means "relevant evidence that a reasonable mind might accept as adequate to support a

21   conclusion."  (*Id*. at 1159) (quotation and citation omitted).  Stated differently, substantial evidence

22   equates to "more than a mere scintilla[,] but less than a preponderance."  (*Id*.) (quotation and

23   citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to

24   support a conclusion."  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and

25   citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

26   consider the entire record as a whole rather than searching for supporting evidence in

27   isolation.  (*Id*.).

28        The court will review only the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  (*Id.*).  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination."  (*Id*). (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not

1  satisfy this severity threshold, however, the Commissioner must find that the claimant is not

2  disabled. (*Id.*).

3      At step three, the Commissioner compares the claimant's impairment to impairments

4  recognized by the Commissioner to be so severe as to preclude a person from engaging in

5  substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more

6  severe than one of the enumerated impairments, the Commissioner must find the claimant disabled

7  and award benefits. 20 C.F.R. § 416.920(d).

8      If the severity of the claimant's impairment does not meet or exceed the severity of the

9  enumerated impairments, the Commissioner must pause to assess the claimant's "residual

10  functional capacity," defined generally as the claimant's ability to perform physical and mental

11  work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

12      At step four, the Commissioner considers whether, in view of the claimant's RFC, the

13  claimant is capable of performing work that he or she has performed in the past (past relevant

14  work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work,

15  the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the

16  claimant is incapable of performing such work, the analysis proceeds to step five.

17      At step five, the Commissioner considers whether, in view of the claimant's RFC, the

18  claimant is capable of performing other work in the national economy. 20 C.F.R. §

19  416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational

20  factors such as the claimant's age, education, and past work experience. (*Id.*). If the claimant is

21  capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20

22  C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis

23  concludes with a finding that the claimant is disabled and is therefore entitled to benefits. (*Id.*).

24      The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*,

25  180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the

26  Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

27  work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*

28  *v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

III. **<u>ISSUES AND ANALYSIS</u>**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises the following issues:

1. The ALJ's RFC assessment failed to include all the limitations and restrictions supported by substantial evidence in the record; and

2. The ALJ erred in finding that Plaintiff's obesity and diabetes were non-severe impairments at Step Two and the resultant RFC fails to include limitations related to those impairments.

*See* (Doc. 22 at 2). The Court addresses the issues in turn below.

A. **Whether the ALJ's RFC Assessment Failed to Include All Limitations and Restrictions Supported by Substantial Evidence in the Record**

    *1.    Governing Authority*

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id*.). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination. … These limitations were entirely consistent with Dr. Koogler's limitation."). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Substantial evidence supports an ALJ's finding that a claimant's mental impairments are non-severe if (1) she properly considered the claimant's mental health records, (2) she properly considered the Paragraph B criteria (*see supra* p. 4, n.3), and (3) the record supports her findings regarding the non-severity. *See Woods v. Kijakazi*, 32 F.4th 785, 794 (9th Cir. 2022).

In rating the degree of limitation in each of the four functional areas, an ALJ "will use the

following five-point scale: None, mild, moderate, marked, and extreme." 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). If the ALJ rates the claimant's limitations as "none" or "mild" in each of the four areas, the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Legal error occurs when an ALJ neglects to document her application of the paragraph B criteria or fails to include a specific finding as to the degree of limitation in any of the four functional areas. *Lee v. Kijakazi*, No. 3:20-cv-01596-H-BGS, 2022 WL 913057, at *4 (S.D. Cal. Mar. 29, 2022) (citing *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011)).

### 2.    *Parties' Contentions*

Plaintiff contends that the ALJ failed to account for all the functional limitations of Dr. Izzi despite finding the opinion persuasive. (Doc. 22 at 9-10). Plaintiff argues that the ALJ's failure to include Dr. Izzi's assessed functional moderate limitations—in understanding, remembering, and carrying out short and simple instructions, interacting appropriately with coworkers and supervisors, and responding appropriately to usual work stress—in the RFC and hypothetical question to the VE is error, and therefore the resultant RFC and subsequent vocational testimony finding that Plaintiff could perform her past work and other work in the national economy is not supported by substantial evidence. (*Id.* at 10).

Defendant contends the ALJ properly assessed Plaintiff's RFC and accounted for limitations with adequate support in the record. (Doc. 23 at 4). Defendant argues that "moderate mental limitations are not disabling and need not be included in an RFC" and the ALJ did not err in failing to incorporate such limitations in the RFC. (*Id.*). Defendant contends that the RFC properly accounted for Plaintiff's mental impairments in each of the four functional areas, the medical opinions of record, and the prior administrative medical findings that had sufficient support in the record. (*Id.* at 4-5). Defendant argues Plaintiff fails to identify any actual conflict between Dr. Izzi's opinion and the RFC finding and therefore has established no reversible error from the ALJ's consideration of the medical opinion evidence. (*Id.* at 11).

///

1                    *3.      Analysis*

2          As set forth *supra*, the ALJ determined Plaintiff's RFC as follows:

3
           [Plaintiff] has the [RFC] to perform work at all exertional levels as defined in 20
4          CFR 416.967(b) except that she can do simple, routine and repetitive work[;]
           understand, carry out and remember simple instructions, terms and procedures[;] is
5          able to maintain work activity for approximately a [two]-hour time period[;] can
           correct mistakes and work at a reasonable pace with the normally given work breaks
6          in a typical work day[;] can sustain a routine schedule[;] can make simple
           judgments on work related decisions[;] is able to ask questions[;] accept
7          constructive criticism[;] tolerate occasional interaction with coworkers[;] and
           complete her work activities without distracting others or otherwise disturbing the
8          work environment.

9

10   (AR 23).  Dr. Izzi assessed the following functional assessment:

11
           Full Scale IQ of 48 would not be consistent with [Plaintiff's] reported occupational
12         history, as well as her activities of daily living.  There were no medical records
           available for review.  There were no objective medical records available for review
13         that would support her subjective complaints.  Clinical interview finds [Plaintiff]
           denying any history of drug usage.  She did not attempt to describe auditory
14         hallucinations.  She stated that she is presently being treated by mental health
           professionals.  She presents with a complex medical history, which would be best
15         addressed by the appropriate medical specialist.

16

17   (AR 536).  Dr. Izzi opined that Plaintiff "would have moderate limits in the ability to understand,

18   remember and carry out both short and simple and detailed and complex instructions and in the

19   ability to interact appropriately with the public, supervisors and coworkers and to respond

20   appropriately to usual work stress."  (AR 28, 538).  He noted that "there were no medical records

21   available for review that would support [Plaintiff's] subjective complaints and [he] diagnosed [her

22   with] a persistent depressive disorder with anxious distress[.]"  (*Id.*).  Dr. Izzi found that despite

23   Plaintiff scoring "in the extremely low range" following an administration of the WAIS-IV, he

24   found the test results "did not appear consistent with her report of activities of daily living, her

25   history of work activity, and the fact that she raised four children[.]"  (*Id.*).  The ALJ noted that Dr.

26   Izzi "did not note any objective clinical observations or mental status findings that would

27   corroborate such a low score, such as an inability to copy shapes or pictures."  (*Id.*).  The ALJ found

28   Dr. Izzi's opinion was "well supported by his objective medical signs and findings and consistent

1    with the observations and medical findings of Dr. Chofla" as Dr. Izzi "did not observe any clinical

2    symptoms of extremely low IQ during his exam" and Dr. Chofla's notes likewise reflect Plaintiff

3    "has consistently shown normal thought processes" during examination.  (*Id.*).  The ALJ therefore

4    found Dr. Izzi's diagnosis and RFC assessment to be persuasive.  (AR 29).

5          Here, the ALJ assessed in the RFC that Plaintiff "could understand, carry out and remember

6    simple instructions, terms and procedures" after finding persuasive the opinion of Dr. Izzi who

7    found Plaintiff was moderately limited in such capacity.  "[A]n ALJ's RFC findings need only be

8    consistent with relevant assessed limitations and not identical to them." *Turner*, 613 F.3d at 1222-

9    23; *Mendoza v. Kijakazi*, Case No. 1:19-cv-1371-HBK, 2022 WL 715096, at *6 (E.D. Cal. Mar.

10   10, 2022) ("When the ALJ credits the functional limitations of a medical source, the RFC need not

11   expressly incorporate each of those limitations if the RFC embraces and accounts for limitations,

12   so long as it [is] not inconsistent with the medical opinion.").  "However, it is error for an ALJ to

13   simultaneously claim to incorporate a medical opinion and yet, without explanation, omit

14   relevant limitations set forth in that medical opinion." *Morgan F. v. Dudek*, No. 4:24-CV-05104-

15   EFS, 2025 WL 621434, at *3 (E.D. Wash. Feb. 26, 2025) (citing SSR 96-8p, 1996 WL 374184 at

16   *7 (July 2, 1996)).

17         The ALJ's inclusion in the RFC of a limitation that Plaintiff could understand, carry out and

18   remember only "simple" instructions, terms and procedures, is not inconsistent with Dr. Izzi's

19   assessment the Plaintiff had "moderate limits" in the ability to understand, remember and carry out

20   simple instructions.  *See Strother v. Comm'r of Soc. Sec.*, No. CIV S–08–0482–CMK, 2009 WL

21   3157472, at *7 (E.D. Cal. Sept. 28, 2009) (finding that ALJ did not error in declining to include a

22   doctor's assessed "moderate" limitation in RFC assessing plaintiff was capable of work involving

23   simple tasks; "the ALJ was not required to recite each and every non-significant limitation which

24   formed the basis of that ultimate opinion") (citing cases).  That is because a "moderate limitation

25   means that an individual is still able to function satisfactorily in the area of the limitation." *Stenson*

26   *v. Astrue*, No. 11CV1054–BEN (BLM), 2012 WL 115440, at *8 (S.D. Cal. Mar. 15, 2012).  Accord

27   *Fergerson v. Berryhill*, No. 5:17-cv-00161-KES, 2017 WL 5054690, at *5 (C.D. Cal. Nov. 1,

28   20127) ("A limitation to 'simple, routine, repetitive' work sufficiently accommodates medical-

opinion evidence that the claimant had a 'moderate' limitation in concentration and attention."). The Court similarly finds the ALJ's RFC adequately limits Plaintiff's ability to interact with others in providing that Plaintiff can "tolerate occasional interaction with coworkers." (AR 23).

Any error by the ALJ in declining or neglecting to present to the vocational expert hypothetical questions involving limitations of moderate scope would not warrant remand because such errors would be harmless, particularly given that other evidence relied upon by the ALJ (such as the opinion of Dr. Garland, *see* AR 97) corroborated that Plaintiff retained the ability to understand and remember simple instructions. *See, e.g., Stenson*, 2012 WL 115440, at *8 ("Given the fact that Plaintiff can still respond appropriately to changes in the work setting at a satisfactory level, omitting [the 'moderate'] limitation from the hypothetical presented to the VE was inconsequential to the ALJ's ultimate nondisability determination.").

**B.     Whether the ALJ Erred in Finding that Plaintiff's Obesity and Diabetes Were Non-Severe Impairments at Step Two and the Resultant RFC Fails to Include Limitations Related to Those Impairments**

*1.     Governing Authority*

"In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments." *Keyser,* 648 F.3d at 725. A claimant has a severe impairment when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

In the Ninth Circuit, step two of the disability inquiry is "a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d at 1290. Thus, "[i]f an adjudicator is unable to

1    determine clearly the effect of an impairment or combination of impairments on the individual's

2    ability to do basic work activities, the sequential evaluation should not end with the not severe

3    evaluation step." *Webb*, 433 F.3d at 687 (citing SSR 85-28). Moreover, "once the ALJ finds the

4    claimant has at least one severe impairment at Step Two, the ALJ must consider all the claimant's

5    impairments when formulating the claimant's RFC, including those impairments the ALJ

6    determined to be non-severe." *Kim R. S. v. Kijakazi*, No. 5:21-cv-00546-JDE, 2022 WL 1405429,

7    at *3 (C.D. Cal. May 4, 2022) (citing *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017)).

8    "Thus, even if an ALJ erred by finding a particular impairment to be non-severe at Step Two, the

9    error is harmless so long as the limitations of that impairment are considered when formulating the

10   claimant's RFC." (*Id.*) (citing cases); accord *Scott H. v. Kijakazi*, No. 3:20-cv-00226-SLG, 2022

11   WL 392293, at *9 (D. Alaska Feb. 9, 2022).

12        The ALJ is responsible for determining credibility,[5] resolving conflicts in medical

13   testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A

14   claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental

15   impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an

16   individual's statements of symptoms alone are not enough to establish the existence of a physical

17   or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007)

18   ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional

19   impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104,

20   1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

21   Determining whether a claimant's testimony regarding subjective pain or symptoms is credible

22   requires the ALJ to engage in a two-step analysis. (*Id.* at 1112). The ALJ must first determine if

23   "the claimant has presented objective medical evidence of an underlying impairment which could

24   reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*,

25

26        [5] SSR 16-3p applies to disability applications heard by the agency on or after March 28,
     2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective
27   symptom evaluation is not "an examination of an individual's character but an endeavor to
     "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017
28   WL 5180304, at *3.

504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted).  This does not require the claimant to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the claimant's testimony."  *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281).  *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons").  The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony.  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019)).  "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince."  *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a claimant's credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities."  *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

1    identified in SSR 16-3P.  (*Id.*) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)).

2    Accord *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors

3    include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or
> other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The
> type, dosage, effectiveness, and side effects of any medication an individual takes
> or has taken to alleviate pain or other symptoms; (5) Treatment, other than
> medication, an individual receives or has received for relief of pain or other
> symptoms; (6) Any measures other than treatment an individual uses or has used to
> relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15
> to 20 minutes every hour, or sleeping on a board); and (7) Any other factors
> concerning an individual's functional limitations and restrictions due to pain or
> other symptoms.

11   SSR 16-3P, 2017 WL 5180304, at *7.  *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

12   supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533

13   F.3d at 1039 (citations and internal quotation marks omitted).

14        The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

15   demanding requirement in Social Security cases.'"  *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

16   Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A

17   finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing

18   court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did

19   not arbitrarily discredit a claimant's testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d

20   487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

21        "The fact that a claimant's testimony is not fully corroborated by the objective medical

22   findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan,* 260 F.3d

23   at 1049.  *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity

24   and persistence of your pain or other symptoms or about the effect your symptoms have on your

25   ability solely because the objective medical evidence does not substantiate your statements."").

26   Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical

27   record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*,

28   400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and

1    identify the evidence that undermines the claimant's complaints – '[g]eneral findings are

2    insufficient.'" (*Id.*) (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

3    However, the medical evidence "is still a relevant factor in determining the severity of the

4    claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

5    The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence

6    from testimony that is "contradicted" by the medical records and concluded that contradictions with

7    the medical records, by themselves, are enough to meet the clear and convincing standard.

8    *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

9                                    *2.      Parties' Contentions*

10   Plaintiff contends the ALJ erroneously concluded there is no evidence that her diabetes and

11   obesity impairments significantly limit her ability to perform basic work activities as the ALJ failed

12   to address how these impairments significantly limit her ability to stand and walk for extended

13   periods of time. (Doc. 22 at 10). Plaintiff argues her obesity has a direct effect on her diabetes and

14   that she "has had continued complications and received treatment for her diabetes and obesity" and

15   cites to various findings in the record in support. (*Id.* at 10-12) (citing AR 420, 698) ("[o]n July 7,

16   2017, [Plaintiff] had a recorded BMI of 54.54 and on March 5, 2020 she had a BMI of 56.55");

17   (citing AR 648, 654, 659) ("her treating providers noted on objective physical exams that she was

18   morbidly obese"); (citing AR 601, 603) ("on September 30, 2019, with a BMI of 59.56, [she]

19   underwent a diabetic foot exam that documented" findings supporting Plaintiff's argument); (citing

20   AR 603) ("provider opined that she was in risk [of] category 2 for diabetic foot complications which

21   is equated with 'loss of protective sensation with weakness, deformity, callus, or pre-ulcer but no

22   history of ulceration.'"); (citing AR 567, 571, 576, 583, 588, 608, 613, 617, 620, 622, 629, 634,

23   639, 682) ("[i]n addition to complaints of pain and swelling on her feet, 1+ to 2+ pitting edema in

24   her bilateral feet was noted frequently on objective physical exams."). Plaintiff further contends

25   the ALJ erred in failing to assess her subjective pain symptomology in determining that her diabetes

26   and obesity were non-severe and in omitting functional limitations from the RFC. (*Id.* at 12).

27   Defendant argues the ALJ properly evaluated Plaintiff's obesity and diabetes, and that the

28   RFC includes all limitations with adequate support in the record. (Doc. 23 at 13). Defendant asserts

the ALJ reasonably concluded that Plaintiff's impairments of obesity and diabetes were non-severe because physical examination showed no abnormalities or skin lesions, Plaintiff's provider noted that she was likely noncompliant in her insulin regimen due to her high sugar levels, the use of Metformin in addition to insulin showed her blood sugar levels trending down, she had a normal neurological examination, and Plaintiff denied having symptoms such as numbness, tingling, and polydipsia. (*Id.* at 14). Defendant contends the ALJ properly noted that two physicians concluded Plaintiff's diabetes was non-severe and therefore the ALJ properly reached the same conclusion. (*Id.*). Defendant further contends that the ALJ properly considered the impact of Plaintiff's obesity on her functionality, finding it non-severe as no treating or examining physician assessed any restrictions based on her obesity and there was no evidence it significantly limited her ability to perform basic work activities. (*Id.* at 15). Defendant argues that the ALJ properly considered Plaintiff's symptomology testimony in finding it inconsistent with the objective medical evidence. The ALJ cites to neutral findings from examinations, Plaintiff's positive response to treatment, and activities of daily living (ADL) "as evidence that Plaintiff's symptoms were not totally disabling[.]" (*Id.* at 16). Defendant argues that even if the ALJ improperly found the impairments non-severe, "any error was harmless" as the ALJ "found no functional limitations resulted from Plaintiff's diabetes and obesity" in assessing the RFC. (*Id.*).

> ### 3.    Analysis
>
> > i.    The ALJ did not err in finding no evidence that Plaintiff's diabetes and obesity significantly limit her ability to perform basic work activities

The ALJ found Plaintiff's diabetes was non-severe and cited to evidence in the record to support that determination. (AR 22) ("As there is no evidence that the claimant's diabetes significantly limits her ability to perform basic work activities, the Administrative Law Judge finds that it is non-severe."); (*see id.* at 21) ("A physical exam showed no abnormalities and her treating physician stated that shew as likely noncompliant with her insulin regimen. She was started on Metformin in addition to insulin … [and] [b]y September 27, 2018, her A1C and blood sugar readings were trending down and she had a normal neurological exam. There were no skin lesions and the claimant denied symptoms of numbness, tingling, polydipsia, polyuria, blurred vision and

1   heat or cold intolerance[.]").  This constitutes substantial evidence.  *See Kenneth K. v. Berryhill*,

2   No. 3:17-cv-01271-JR, 2018 WL 6991256, at *4 (D. Or. Dec. 19, 2018) (finding ALJ's

3   determination that claimant's diabetes was not a severe impairment was supported by substantial

4   evidence because medical records showed her diabetes was "controlled"), *report and*

5   *recommendation adopted by* 2019 WL 165700 (Jan. 10, 2019).  The ALJ acknowledged that

6   Plaintiff is morbidly obese and that "the obesity reasonably has some impact on functioning, but

7   not beyond the [assessed RFC.]" (AR 30).  The ALJ therefore found the impairment non-severe

8   "as no treating or examining physician has given her any restrictions based on obesity and there is

9   no evidence that this impairment significantly limits [Plaintiff's] ability to perform basic work

10   activities[.]" (AR 22).  Further, the ALJ considered the third-party report of Plaintiff's daughter,

11   Alice Thao, and allegation therein that Plaintiff experienced physical symptoms such as "leg

12   cramps." (AR 26).  The ALJ discounted that allegation because "[it is] not documented in any

13   physical exams." (*Id.*).

14       On September 30, 2019, Plaintiff visited a provider for a diabetic foot evaluation which

15   noted problems including diabetes and obesity.  (AR 601-05).  The bilateral foot exam revealed

16   that Plaintiff had "[p]ulse at dorsalis pedis is undetectable and posterior tibalis is undetectable.  Her

17   skin has a callus present at midfoot and heels bilaterally and lack of hair.  Sensory exam shows

18   decreased proprioception and decreased vibratory sense to tuning force.  There is no pedal or ankle

19   edema present." (AR 603).  The provider assessed a risk category of "2" and noted "[l]oss of

20   protective sensation with weakness, deformity, callus or pre-ulcer but no history of ulceration.

21   Patient does not use footwear appropriate for category" and noted in the neurological exam no gross

22   abnormalities.  (*Id.*).

23       However, the Court finds that none of these treatment records state or suggest that Plaintiff

24   suffers from any significant limitations as a result of her diabetes or obesity, either singly or in

25   combination, that affect her ability to stand, walk, and otherwise perform basic work activities.  The

26   September 30, 2019, exam findings corroborate this determination as the provider noted Plaintiff

27   participates "in routine exercise" and "[s]he walk[s.]" (AR 603).  Plaintiff's assertion that obesity

28   "is often associated with and increases the risk of developing impairments such as Type II diabetes"

1    does not arise to evidence that she currently faces significant limitations in her ability to perform

2    basic work activities.  (Doc. 22 at 12).

3            Because the ALJ properly noted that no treating or examining physician has assessed any

4    restrictions based on her obesity and there is no record evidence that her impairments significantly

5    limit her ability to stand, walk, or perform basic work activities, the Court finds the ALJ did not err

6    in finding the impairments non-severe.  *Smolen*, 80 F.3d at 1290 ("An impairment or combination

7    of impairments is not severe if it does not significantly limit your physical or mental ability to do

8    basic work activities.").

9                        ii.  <u>The ALJ did not err in discounting Plaintiff's subjective pain testimony</u>

10            The Court finds the ALJ provided clear and convincing reasons in properly discounting

11    Plaintiff's subjective pain testimony.  The ALJ acknowledged Plaintiff's obesity and diabetes and

12    treatment thereof throughout the record and noted that her obesity "reasonably has some impact on

13    functioning" and considered its effects as documented in the medical opinions in assessing the RFC.

14    (AR 30).  The ALJ noted examination findings showed Plaintiff experienced no abnormalities.  (AR

15    21).  The record evidence supports this finding given that Plaintiff experienced swelling in her feet

16    but also normal range of motion and gait and no tenderness nor pain on palpitation.  (AR 567)

17    ("Inspection of both feet reveals swelling … [ROM] is normal … No pain is noted … at all the

18    joints of the right foot.  No tenderness is noted on palpitation); (*see also id.* at 576, 583) (same).

19    Further, evidence in the record contradicts Plaintiff's subjective pain testimony.  The ALJ noted

20    that Plaintiff stated she had applied for work but was not hired, which shows "she considers herself

21    capable for performing work activity" which is "inconsistent with her allegations of disabling

22    symptoms."  (AR 25); (*see id.* at 506) ("[Plaintiff] complains that she did resume in English, but

23    was not accepted for job at beauty store.  'they did not ask [her] to speak English.'").  The ALJ also

24    reasonably considered other occasions noted in the record where Plaintiff appeared to give

25    inconsistent or contradictory statements, including about her ability to speak English (AR 24).  And

26    as noted above, Plaintiff's reports documented in various examination records that she routinely

27    exercises and "walks" contradict her allegations of disabling pain.  (AR 603).  *Smolen*, 80 F.3d at

28    1284 (in weighing claimant credibility, ALJ may employ "ordinary techniques of credibility

1    evaluation, such as the claimant's … prior inconsistent statements concerning the symptoms, and

2    other testimony by the claimant that appears less than candid").

3        Because Plaintiff fails to show the ALJ erred in discounting her subjective pain testimony,

4    and the ALJ provided clear and convincing reasons that contradict Plaintiff's sole complaint at the

5    hearing that she "cannot work" because standing for a long time causes her feet to swell, the Court

6    finds the ALJ did not err in rejecting that testimony.  *Hairston*, 827 Fed. Appx. at 773.

7    **IV.    CONCLUSION AND ORDER**

8        For the reasons set for above, IT IS HEREBY ORDERED that:

9        1.    Plaintiff's motion for summary judgment (Doc. 22) is **DENIED**;

10       2.    Defendant's cross-motion for summary judgment (Doc. 23) is **GRANTED**;

11       3.    The ALJ's decision is affirmed; and

12       4.    The Clerk of the Court is **DIRECTED** to enter judgment in favor of Defendant and

13             close this case.

14   IT IS SO ORDERED.

15   Dated:   __May 7, 2025__                  _____

16                                             UNITED STATES MAGISTRATE JUDGE